

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROGER CANUPP, JACOB MYERS,　　　)
LAWRENCE MCGEE, in need of a next　)
friend, HUBERT DAVIDSON, TYWAUN　)
JACKSON, CHARLES DURDEN,　　　　)
DANIEL FABIAN, and BRUCE KRAMER,)
individually, and on behalf of a Class of all　)
persons similarly situated,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
LIBERTY BEHAVIORAL HEALTH　　　)
CORPORATION and JERRY REGIER, in　)
his official capacity as Secretary of the　　)
Department of Children and Families,　　)
　　　　　　　　　　　　　　　　　　)
　　　　Defendants　　　　　　　　　)
_____)

**JOHN E. STEELE**
**UNITED STATES DISTRICT JUDGE**

**DOUGLAS N. FRAZIER**
**U.S. MAGISTRATE JUDGE**

CASE NO.

2:__04__-c__V__-__260__-FtM-29DNF

## CLASS ACTION COMPLAINT

## INJUNCTIVE RELIEF SOUGHT

## PRELIMINARY STATEMENT

1.　　　Plaintiffs, ROGER CANUPP, JACOB MYERS, LAWRENCE MCGEE, HUBERT

DAVIDSON, TYWAUN JACKSON, CHARLES DURDEN, DANIEL FABIAN, and BRUCE

KRAMER, individually, and on behalf of a class of all persons similarly situated, all of whom are

involuntarily confined to the care and custody of the State of Florida, Department of Children and

Families (DCF) and confined at the Florida Civil Commitment Center (FCCC), pursuant to §§

394.910-394.931, Fla. Stat. (2003) (The Sexually Violent Predator Act or The Act), and all of whom

allege they have been the victims of constitutionally and statutorily inadequate treatment and

conditions, seek declaratory and injunctive relief to enforce their right to constitutionally and

statutorily adequate treatment and conditions, as secured to them by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 12131 *et seq.* (the Americans with Disabilities Act).

2.      This complaint arises from Defendants' failure to provide constitutionally adequate sex offender treatment programs, mental health services, and care to Plaintiffs during their confinement at FCCC, a civil confinement facility located on the grounds of a former Department of Corrections facility in Arcadia, Florida . FCCC is the only facility in Florida designated to house and provide treatment services for men confined under the Sexually Violent Predator Act. The residents are involuntarily confined to the facility for long-term care, control, and treatment after they have completed their criminal sentences.

3.      The Defendants have also violated Plaintiffs' rights under 42 U.S.C. § 12131 *et seq.*, the Americans with Disabilities Act, by effectively excluding Plaintiffs from participation in their treatment program as a result of their disabilities.

4.      The named Plaintiffs, on behalf of themselves and on behalf of a class of similarly situated individuals,  seek a declaratory judgment that the policies and practices of the Defendants concerning the constitutionally and statutorily inadequate treatment violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Americans with Disabilities Act, and corresponding injunctive relief requiring the Defendants to cease their unlawful conduct and to implement measures to prevent its continuation.

## JURISDICTION

5.      The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331 as this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) as this action seeks redress for civil rights violations under 42 U.S.C. § 1983.

6.     This Court has jurisdiction over claims seeking declaratory relief and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

7.     The Plaintiffs also seek attorney's fees and costs pursuant to 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing Plaintiffs in actions brought pursuant to 42 U.S.C. § 1983, and pursuant to 42 U.S.C. § 12205, which authorizes the award of attorneys' fees, including litigation expenses and costs.

## VENUE

8.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial number of the events and omissions giving rise to Plaintiffs' claims occurred in the District.  Venue is also proper within this Division pursuant to Local Rule 1.02(b)(5) for the same reasons.

## PARTIES

9.     Plaintiff Roger Canupp was convicted of a sexual offense in March 1999.  He was sentenced to two years, 23 days of imprisonment.  He completed his sentence in February 2000.  Mr. Canupp has been involuntarily confined at FCCC pursuant to the Act since the completion of his prison sentence in February 2000.

10.     Plaintiff Jacob Myers was convicted of a sexual offense in October 1997.  He was sentenced to three years, eight months imprisonment.  He completed his sentence in April 2001.  Mr. Myers has been involuntarily confined at FCCC pursuant to the Act since the completion of his prison sentence in April 2001.

11.     Plaintiff Lawrence McGee was convicted of a sexual offense in April 1994.  He was sentenced to seven years imprisonment.  He completed his sentence in January 2000.  Mr. McGee has been confined at FCCC pursuant to the Act since the completion of his prison sentence in

January 2000. Although legally competent, Mr. McGee is *de facto* incompetent for the purposes of this complex litigation and is in need of a next friend.

12.     Plaintiff Hubert Davidson was convicted of a sexual offense in January 1997. He was sentenced to ten years imprisonment. He completed his sentence in November 2000. Mr. Davidson has been involuntarily confined at FCCC pursuant to the Act since the completion of his prison sentence in November 2000.

13.     Plaintiff Tywaun Jackson was convicted of a sexual offense in February 1996. He was sentenced to five years, six months imprisonment. He completed his sentence in January 1999. Mr. Jackson has been confined at FCCC pursuant to the Act since the completion of his prison sentence in January 1999.

14.     Plaintiff Charles Durden was convicted of a sexual offense in April 1994. He was sentenced to 12 years imprisonment. He completed his sentence in January 1999. Mr. Durden has been involuntarily confined at FCCC pursuant to the Act since the completion of his prison sentence in January 1999.

15.     Plaintiff Daniel Fabian was convicted of a sexual offense in May 1995. He was sentenced to four years, six months imprisonment. He completed his sentence in October 2000. Mr. Fabian has been involuntarily confined at FCCC pursuant to the Act since the completion of his prison sentence in October 2000.

16.     Plaintiff Bruce Kramer was convicted of a sexual offense in August 1994. He was sentenced to nine years imprisonment. He completed his sentence in September 2000. Mr. Kramer has been involuntarily confined at FCCC pursuant to the Act since the completion of his prison sentence in September 2000.

17.     Defendant, Liberty Behavioral Health Corporation (Liberty), is a for-profit Pennsylvania corporation that contracts to provide mental health and substance abuse treatment through public and private sector programs.   Liberty is acting under color of state law under contract with the Department of Children and Families to provide, *inter alia,* sex offender treatment, mental health services, and on-site medical services to the residents confined at FCCC. All of Liberty's actions are the result of their customs, policies, and practices.  Liberty is sued for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses.

18.     Defendant, Jerry Regier, is the Secretary of the Florida Department of Children and Families.  He is acting under color of state law.   As Secretary, he is the highest-ranking official of the Department of Children and Families.  He is sued in his official capacity for declaratory and injunctive relief, attorneys' fees, costs, and litigation expenses.

## CLASS ACTION ALLEGATIONS

19.     This action is brought by the named Plaintiffs as a class action, pursuant to the provisions of Rule 23(b)(2) of the Federal Rules of Civil Procedure, for injunctive and declaratory relief on behalf of a class of all persons similarly situated.

20.     The class of Plaintiffs consists of all persons who are or will be confined under the Act and placed in the custody of DCF at FCCC.

21.     The Plaintiff class is so numerous that joinder of all members would be impracticable.   The population at FCCC exceeds 420 individuals and is constantly growing larger as new persons are confined under the Act.

22.     Controlling issues of law and fact are common to all members of the Plaintiff class.   The predominant issue is whether the treatment program, mental health services, and care provided by the Defendants or those acting under their control or direction comports with the requirements of the

Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Americans with Disabilities Act.

23.    The claims of the individual Plaintiffs are typical of the claims of class members. All claims are based on the same factual and legal theories in that they have all been harmed by the unconstitutional practices alleged in this complaint.

24.    The named Plaintiffs will fairly and adequately protect the interests of the members of the Plaintiff class. The named Plaintiffs have a strong personal interest in the outcome of this action and have no conflicts of interest with members of the Plaintiff class. The named Plaintiffs are all current residents of FCCC.

25.    The named Plaintiffs are represented by experienced counsel who specialize in class action litigation concerning conditions and practices in institutions.

26.    Defendants have acted on grounds generally applicable to the Plaintiff class as a whole, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole. The Defendants' customs, policies, and practices of failing to provide constitutionally and statutorily adequate sex offender treatment, mental health services, and care necessitates injunctive relief directing Defendants to implement remedial measures.

## GENERAL FACTUAL ALLEGATIONS

### Overview of Statute

27.    Florida statute §§ 394.910-394.931 provides for DCF to involuntarily detain and civilly commit persons judicially determined to be a "sexually violent predator."

28.    In order to be confined under the Act, an individual must have a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined to a secure facility for long-term control, care, and treatment. Fla. Stat. § 394.912(10).

29.     The Florida Legislature found that because the prognosis for rehabilitating sex offenders in a prison setting is poor, the treatment needs of the population are long-term, and the treatment modalities for this population are very different from the traditional treatment modalities for people committed under the Baker Act, a specialized treatment facility and treatment program was necessary. Fla. Stat. § 394.910.

30.     All residents confined under the Sexually Violent Predator Act must have been convicted of a sexually violent offense. Fla. Stat. § 394.912 (10)(a).

31.     All residents confined under the Sexually Violent Predator Act must have a mental abnormality. Fla. Stat. § 394.912 (10)(b). Mental abnormality is defined as a mental condition affecting a person's emotional or volitional capacity which predisposes the person to commit sexually violent offenses. Fla. Stat. § 394.912 (5).

32.     If a court or jury determines a person is a sexually violent predator, the person shall be committed to the custody of DCF for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large. Fla. Stat. § 394.917(2).

33.     The Act mandates that the long-term control, care, and treatment of residents committed under the Act must conform to constitutional requirements. Fla. Stat. § 394.922.

34.     DCF is responsible for all costs relating to the treatment of persons committed to DCF's custody under the Act. Fla. Stat. § 349.929.

35.     A person committed under the statute shall have an examination of their mental condition once every year. Fla. Stat. §394.918(1). A court holds a limited hearing to determine whether there is probable cause to believe that the person's condition has so changed that it is safe for the person to

be at large. If the court determines there is probable cause to believe it is safe to release the person, the court shall set a trial on the issue. Fla. Stat. §394.918(3).

## Overview of Florida Administrative Code

36.    The Act requires DCF to adopt rules for the components of the basic treatment plan for all committed persons under this part. Fla. Stat. § 394.930(5).

37.    DCF has adopted only one rule relevant to the treatment program. That rule includes: (1) the treatment program shall be a cognitive-behavioral therapy and relapse prevention program tailored to meet the needs of each committed individual; (2) the treatment program shall consist of hierarchically advancing stages that afford group and, where indicated, individual counseling toward sex offender-specific as well as substance abuse and general psychological issues; (3) the program must offer vocational therapy and therapeutic recreational activities; and (4) where medically and therapeutically appropriate, the treatment program may offer, on a voluntary basis, pharmacological treatment designed to reduce deviant sexual impulses. F.A.C. 65E-25.005.

## Overview of DCF's contract with Liberty

38.    The Act authorizes DCF to contract with a private entity for operation of facilities to comply with the requirements of the Act. Fla. Stat. § 394.9151.

39.    DCF entered into its first contract with Liberty for FCCC in July 2001. The purpose of the contract is for Liberty to provide secure residential treatment services to persons confined pursuant to The Sexually Violent Predator Act. The most recent contract between DCF and Liberty began on January 1, 2003 and ends June 30, 2005.

40.    The contract provides that DCF is responsible for the oversight and monitoring of private providers such as Liberty. The contract specifies that DCF may monitor or conduct oversight reviews to evaluate compliance with contract, management, and programmatic requirements.

41.     The contract specifies Liberty will provide a professional staff that is highly qualified and experienced in the treatment of sexual offenders; design and deliver an effective and responsible treatment program that is based on clinically-supported techniques and best practices; integrate activities that continually focus on ensuring successful treatment; and recruit, credential, and hire qualified professionals in a timely manner.

42.     In the contract, DCF agreed to make payment for services rendered for a dollar amount not to exceed $45, 237, 055.00 for the three years of the contract.

43.     The contract specifies that the treatment program shall consist of a sex-offender specific treatment component and a non-sex-offender treatment component addressing general psychological issues, substance abuse, and the like.

44.     Services shall be provided at the FCCC in Arcadia, Florida.  Liberty may not change locations.

### Overview of Liberty's "Treatment" Program

45.     According to the FCCC treatment handbook drafted by the FCCC administration, the treatment program has four stages: (1) reception and custody; (2) introduction to treatment – assessment and evaluation; (3) intermediate treatment – phases one through four; and (4) community treatment. This is the one and only treatment program available to residents at the facility. There are no adaptations or alternatives to this treatment program.

46.     According to the treatment handbook, Stage I consists of an orientation to the program, including a review of the resident handbook, review of rules and regulations, review of the treatment program stages, expectations of treatment, and informed consent. To complete Stage I, residents must acknowledge committing past sexual offenses, behave appropriately inside and outside of

group, demonstrate adjustment to social environment, participate in assessment procedures, and complete a letter of intent and consent to treatment form.

47.     According to the treatment handbook, Stage II consists of an evaluation of the resident, including medical, psychological, psychiatric, educational, vocational, chemical abuse, social work and recreation.   Residents are introduced to rational self-counseling, a program that challenges irrational self-talk, and they are to develop and present their sexual autobiography.   To complete Stage II, residents must complete a battery of tests and interviews, attend the rational self-counseling groups, complete at least five satisfactory rational self-analysis exercises, complete and present a sexual autobiography consistent with official records and documents, behave appropriately in treatment, demonstrate positive adjustment to the social environment, and pass a polygraph test on the responses to their sex offender specific assessment.

48.     According to the treatment handbook, Stage III, unlike Stages I and II, consists of four phases. Phase 1 includes a sex offender specific process group, core sex offender group, and some specialty groups (e.g. anger management, leisure education, human sexuality).  There are no written guidelines to determine who attends which specialty groups or how many specialty groups a resident is to attend. To complete Phase 1, residents must complete at least 25 satisfactory rational self-analysis exercises, present a sexual autobiography, complete the groups required by administration, behave appropriately, make a commitment not to re-offend, demonstrate positive adjustment to the social environment, and pass a polygraph test on the information contained in their sexual autobiography.

49.     According to the treatment handbook, Phase 2 consists of a sex offender specific process group, core sex offender group, and some specialty groups (e.g. anger management, leisure education, human sexuality).   There are no written guidelines to determine who attends what

specialty groups. To complete Phase 2, residents must complete all groups required by the administration, develop and present a lay-out (a summary of their sexual autobiography), complete a behavior/offense chain for convictions and non-convictions, complete satisfactory rational self-analysis for convictions and non-convictions, recognize and correct cognitive distortions, identify high-risk factors to sexual offending, behave appropriately in treatment, and demonstrate positive adjustment to social environment.

50.    According to the treatment handbook, Phase 3 consists of a sex offender specific group, core sex offender group, and a specialty group (sexual arousal modification). To complete Phase 3, residents must complete all groups required by the administration, understand the victim's experience, show ability to control deviant sexual urges and interests, identify high-risk factors and show ability to cope, behave appropriately in treatment, and demonstrate positive adjustment to social environment.

51.    According to the treatment handbook, Phase 4 consists of a sex offender specific process group, core sex offender group, and some specialty groups (e.g. sexual arousal management and family relationships). To complete Phase 4, residents must complete all required groups, develop a comprehensive and realistic relapse prevention plan, understand the victim's experience, show an ability to control deviant sexual urges and show an ability to cope, behave appropriately in treatment, and demonstrate positive adjustment to social environment.

52.    According to the treatment handbook, Stage IV is transition into the community. The treatment handbook states that community transition will "be determined on an individual basis by the courts and to be developed in law," but should include a sex offender specific process group and a specialty group (sexual arousal management). To complete Stage IV, residents must continue to

meet all other criteria, demonstrate a positive adjustment to social environment, and demonstrate a motivation to continue treatment after discharge.

### Factual Allegations: "Treatment" Program

53.     Most phases of the treatment program are heavily weighted toward reading and writing assignments that are required to be completed prior to advancing to the next phase of the program. Individuals who cannot read or write or have limited abilities to do so are effectively excluded from participating in treatment activities and the treatment program.

54.     The amount of time residents spend in group or treatment activities varies based upon the number of groups available.  The number of groups available varies on a weekly basis based upon the availability of treatment staff.  Defendants are not providing an adequate staff for the treatment program.   Liberty has acknowledged the need for at least an additional 21 clinical staff without whom FCCC will be unable to effectively serve its residents participating in treatment.

55.     Residents confined to FCCC are not evaluated as to their individual conditions that might present any barriers to their full participation in any of the programs or to determine whether accommodations are required to prevent residents from being excluded from participating in treatment.

56.     The services provided are not individualized to address residents' individual needs.

57.     No consideration is given to the use of pharmaceuticals for control of sexual behaviors, even if the individual requests such medication.

58.     Although there are over 420 residents currently confined to the facility, DCF has limited the number of participants in treatment to 150 residents.

## FACTUAL CLAIMS OF THE INDIVIDUAL PLAINTIFFS

### Plaintiff Roger Canupp

59.     As set forth in ¶ 9, Mr. Canupp was convicted of a sexual offense in March 1999. He was sentenced to two years, 23 days of imprisonment. He completed his sentence in February 2000. Mr. Canupp has been involuntarily confined at FCCC pursuant to the Act since the completion of his prison sentence in February 2000.

60.     Mr. Canupp is not participating in the treatment program.

61.     Mr. Canupp has been diagnosed with Bipolar Disorder, Personality Disorder, and Paranoid Schizophrenia. These mental impairments substantially limit one or more of Mr. Canupp's major life activities.

62.     Mr. Canupp has a history of major behavioral incidents that are the result of his mental illnesses. These include placing his clothes in his toilet and flooding his room numerous times, throwing feces at other residents, hearing voices, and walking around his dorm naked. Although FCCC is aware of these incidents, the facility is not providing appropriate mental health treatment.

63.     Mr. Canupp has not been evaluated to determine the efficacy of any pharmaceutical treatments, nor has he been offered any pharmaceuticals that may decrease sexual impulses as a part of treatment if appropriate.

64.     Mr. Canupp does not have a plan to address his severe mental health needs or to address his sex offender treatment needs, including self-improvement or therapeutic engagement issues related to the sex offender treatment program. Until and unless Mr. Canupp has a plan addressing these needs, he will not be able to participate in the treatment program.

65.     Defendants' only efforts to address Mr. Canupp's mental illnesses are to have him meet with a psychiatrist approximately once every two months for a short period of time. This frequency and

duration does not meet Mr. Canupp's severe mental health needs. The substance of the sessions is also insufficient to meet Mr. Canupp's severe mental health needs.

66.     In spite of their knowledge of Mr. Canupp's disabilities, Defendants have excluded Mr. Canupp from participation in the treatment program by not accommodating his disabilities. His inability to interact with group members makes his participation in group activities and participation in treatment activities impossible.

67.     The failure to provide adequate psychiatric services, including evaluating and offering pharmaceuticals that reduce sexual impulses and the failure to provide a plan addressing mental health and treatment needs is unreasonable and a substantial departure from acceptable professional standards.

68.     FCCC has failed to provide Mr. Canupp with individualized treatment to address his mental illnesses.

69.     Mr. Canupp is being harmed by his extended and continued confinement in the facility as the result of the Defendants' failure to provide adequate psychiatric services and as the result of Defendants' failure to provide a plan addressing mental health and sexual offender treatment needs. Mr. Canupp continues to experience the effects of his untreated mental illness, which are exacerbated by the conditions at FCCC.

### **Plaintiff Jacob Myers**

70.     As set forth in ¶ 10, Mr. Myers was convicted of a sexual offense in October 1997. He was sentenced to three years, eight months imprisonment. He completed his sentence in April 2001. Mr. Myers has been involuntarily confined at FCCC pursuant to the Act since the completion of his prison sentence in April 2001.

71.     Mr. Myers is not participating in the treatment program.

72.     Mr. Myers has been diagnosed with Borderline Personality Disorder and Schizophrenia. Mr. Myers has a history of mental health problems at the facility, as well as during his time in the custody of the Department of Corrections and while residing in the community. These mental impairments substantially limit one or more of Mr. Myers' major life activities.

73.     Numerous incident reports evidence Mr. Myers' suicide attempts, threats of self-injurious behavior, and auditory hallucinations.

74.     Mr. Myers has not been evaluated to determine the efficacy of any pharmaceutical treatments, nor has he been offered any pharmaceuticals that may decrease sexual impulses as a part of treatment if appropriate.

75.     Mr. Myers does not have a plan to address his severe mental health needs or to address his sexual offender treatment needs, including self-improvement or therapeutic engagement issues related to the sex offender treatment program. Until and unless Mr. Myers receives a plan addressing these issues, he will not be able to participate in the treatment program.

76.     Defendants' only efforts to address Mr. Myers' mental illnesses are to have him meet with a psychiatrist approximately once every one to two months for a short period of time. This frequency and duration does not meet Mr. Myers' severe mental health needs. The substance of the sessions is also insufficient to meet Mr. Myers' severe mental health needs.

77.     In spite of their knowledge of Mr. Myers' disabilities, Defendants have excluded Mr. Myers from participation in the treatment program by not accommodating his disabilities. His inability to interact with group members makes his participation in group activities and participation in treatment activities impossible.

78.     The failure to provide adequate psychiatric services, including evaluating and offering pharmaceuticals that reduce sexual impulses and the failure to provide a plan addressing mental

health and treatment needs is unreasonable and a substantial departure from acceptable professional standards.

79.     FCCC has failed to provide Mr. Myers with individualized treatment to address his mental illnesses.

80.     Mr. Myers is being harmed by his extended and continued confinement in the facility as a result of Defendants' failure to provide adequate psychiatric services and as a result of Defendants' failure to provide a plan addressing mental health and treatment needs.  His untreated mental illnesses are exacerbated by the conditions at FCCC.

### **Plaintiff Lawrence McGee**

81.     As set forth in ¶ 11, Mr. McGee was convicted of a sexual offense in April 1994.  He was sentenced to seven years imprisonment.  He completed his sentence in January 2000.  Mr. McGee has been involuntarily confined at FCCC since the completion of his prison sentence in January 2000.  Mr. McGee consented to treatment in June 2001. Although legally competent, Mr. McGee is *de facto* incompetent for the purposes of this complex litigation and is in need of a next friend.

82.     Mr. McGee has never moved past Stage 2 of treatment since consenting to treatment in June 2001.

83.     Mr. McGee has mild to moderate mental retardation and has been diagnosed with a reading disorder, disorder of written expression, schizophrenia, and dementia. These mental impairments substantially limit one or more of Mr. McGee's major life activities.

84.     In spite of their knowledge of Mr. McGee's disabilities, Defendants have effectively excluded Mr. McGee from participating in the treatment program by not accommodating his disabilities.  His inability to interact with group members and his difficulty with reading and writing make his participation in group activities and participation in treatment activities impossible.

85.    Mr. McGee has been found not guilty by reason of insanity of prior criminal charges, was housed in Florida State Hospital in Chattahoochee from 1973-1992, and had at least five admissions to a Crisis Stabilization Unit, an intensive emergency inpatient psychiatric unit, while in the custody of the Department of Corrections.

86.    Mr. McGee is not receiving literacy training.

87.    Mr. McGee has not been evaluated to determine the efficacy of any pharmaceutical treatments, nor has he been offered any pharmaceuticals that may decrease sexual impulses as an alternative to or as a part of treatment if appropriate.

88.    The failure to provide adequate psychiatric services, including the use of pharmaceuticals designed to decrease sexual impulses and the failure to provide a treatment program that will allow participants who are learning disabled, mentally retarded, and mentally ill treatment to participate in treatment is unreasonable and a substantial departure from acceptable professional standards.

89.    Mr. McGee is being harmed by his extended and continued confinement in the facility as a result of the Defendants' failure to provide adequate psychiatric services, including pharmaceuticals designed to decrease sexual impulses, and the Defendants' failure to accommodate his disabilities that effectively exclude his participation in sex offender treatment.

**Plaintiff Hubert Davidson**

90.    As set forth in ¶ 12, Mr. Davidson was convicted of a sexual offense in January 1997. He was sentenced to ten years imprisonment. He completed his sentence in November 2000. Mr. Davidson has been involuntarily confined at FCCC pursuant to the Act since the completion of his prison sentence in November 2000. Mr. Davidson consented to treatment in February 2001.

91.    Mr. Davidson has not moved past Stage 2 in treatment since consenting to treatment in February 2001.

92.     Mr. Davidson has been diagnosed with Borderline Intellectual Functioning and a Learning Disorder, Not Otherwise Specified. These mental impairments substantially limit one or more of Mr. Davidson's major life activities.

93.     In spite of their knowledge of Mr. Davidson's disabilities, Defendants have effectively excluded Mr. Davidson from participation in the treatment program by not accommodating his disabilities so that he is able to participate in the treatment program. His inability to interact with group members and his difficulty with reading and writing make his participation in group activities and participation in treatment activities impossible.

94.     Mr. Davidson has not been evaluated to determine the efficacy of any pharmaceutical treatments, nor has he been offered any pharmaceuticals that may decrease sexual impulses as an alternative to or as a part of treatment if appropriate.

95.     The failure to provide adequate psychiatric services, including the use of pharmaceuticals designed to decrease sexual impulses, and the failure to provide a treatment program that will allow participants with learning disabilities or mental retardation to participate in treatment is unreasonable and a substantial departure from acceptable professional standards.

96.     FCCC has failed to provide Mr. Davidson with individualized treatment as will give him a reasonable opportunity to improve his mental condition.

97.     Mr. Davidson is being harmed by his extended and continued confinement in the facility as a result of the Defendants' failure to provide adequate psychiatric services, including the use of pharmaceuticals designed to decrease sexual impulses and psychotropic medications, and the Defendants' failure to accommodate his disabilities that effectively exclude him from participating in sex offender treatment.

**Plaintiff Tywaun Jackson**

98.     As set forth in ¶ 13, Mr. Jackson was convicted of a sexual offense in February 1996. He was sentenced to five years, six months imprisonment. He completed his sentence in January 1999. Mr. Jackson has been involuntarily confined at FCCC pursuant to the Act since the completion of his prison sentence in January 1999. Mr. Jackson consented to treatment in February 2000.

99.     Mr. Jackson completed Stage 2 of treatment in September 2000. Mr. Jackson completed Stage 3, Phase 1 of treatment in February 2002. Mr. Jackson has been in Stage 3, Phase 2 of the treatment program since February 2002.

100.    Mr. Jackson has not been evaluated to determine the efficacy of any pharmaceutical treatments, nor has he been offered any pharmaceuticals that may decrease sexual impulses as a part of treatment if appropriate.

101.    Mr. Jackson requested to receive anti-androgen medications as a part of his treatment in February 2000. This request was rejected by the facility. The facility rejected this request not because of treatment-related reasons, but because the facility does not offer pharmaceuticals as a part of the treatment program.

102.    The amount of time Mr. Jackson spends in treatment group activities depends on the number of specialty groups in which he is placed as well as staff availability to lead those groups. There have been instances when his time in treatment groups is as low as two hours per week because of staff unavailability.

103.    Mr. Jackson has consented to participate in any and all mental health treatment programs provided by the Defendants. Mr. Jackson has never refused treatment or to participate in any tests administered by the Defendants. Mr. Jackson has fully cooperated with facility staff and successfully

completed all of the treatment stages available to him.  Mr. Jackson is ready to move on from the current treatment program to the final stages, including stage IV: discharge readiness.

104.    Mr. Jackson is unable to complete the treatment program because FCCC does not have a discharge readiness program currently in place.

105.    Although FCCC recognizes the importance of family involvement in discharge readiness, Mr. Jackson has not been offered to incorporate his family into his treatment and rehabilitation efforts.

106.    FCCC's treatment professionals have stated that Mr. Jackson must complete all stages and phases of its treatment program, including stage IV community treatment, in order for his disorder to sufficiently "change" so that it will be safe in order for him to be at large.  However, FCCC has no community treatment program for Mr. Jackson to complete.  Mr. Jackson is in the most advanced stage currently in place at the facility.  The facility does not have in place, nor does it have any plans to implement, the community transition stage of treatment.

107.    The failure to evaluate for the efficacy of use of pharmaceuticals in treatment, to offer pharmaceuticals as a part of treatment where appropriate, to provide adequate staffing for the treatment program, and to have all phases and stages of the treatment program, including a community release program, in place and functioning is unreasonable and a substantial departure from acceptable professional standards.

108.    FCCC has failed to provide Mr. Jackson with individualized treatment as will give him a reasonable opportunity to improve his mental condition.

109.    Mr. Jackson is being harmed by his extended and continued confinement in the facility as a result of the Defendants' failure to evaluate for the efficacy of use of pharmaceuticals in treatment, to offer pharmaceuticals as a part of treatment where appropriate, to provide adequate staffing for the

treatment program, and have all of the phases of the treatment program, including community transition, developed and in place.

### Plaintiff Charles Durden

110.   As indicated in ¶ 14 , Mr. Durden was convicted of a sexual offense in April 1994. He was sentenced to 12 years imprisonment. He completed his sentence in January 1999. Mr. Durden has been involuntarily confined at FCCC pursuant to the Act since the completion of his prison sentence in January 1999. Mr. Durden consented to treatment in September 1999.

111.   Mr. Durden completed Stage 2 in September 2000. Mr. Durden completed Stage 3, Phase 1 in February 2002. Mr. Durden is currently in Stage 3, Phase 2 of the treatment program.

112.   Mr. Durden has not been evaluated to determine the efficacy of any pharmaceutical treatments, nor has he been offered any pharmaceuticals that may decrease sexual impulses as a part of treatment if appropriate.

113.   The amount of time Mr. Durden spends in treatment group activities depends on the number of specialty groups in which he is placed as well as staff availability to lead those groups. There have been instances when his time in treatment groups is as low as two hours per week because of staff unavailability.

114.   Mr. Durden has consented to participate in any and all mental health treatment programs provided by the Defendants. Mr. Durden has never refused treatment or to participate in any tests administered by the Defendants. Mr. Durden has fully cooperated with facility staff and successfully completed all of the treatment stages available to him. Mr. Durden is ready to move on from the current treatment program to stage IV: discharge readiness.

115.   Mr. Durden is unable to complete the treatment program because FCCC does not have a discharge readiness program currently in place.

116.    Although FCCC recognizes the importance of family involvement in discharge readiness, Mr. Durden has not been offered to incorporate his family into his treatment and rehabilitation efforts.

117.    FCCC's treatment professionals have stated that Mr. Durden must complete all stages and phases of its treatment program, including stage IV community treatment, in order for his disorder to sufficiently "change" so that it will be safe in order for him to be at large. However, FCCC has no community treatment program for Mr. Durden to complete. Mr. Durden is in the most advanced stage of treatment currently in place at the facility. The facility does not have in place, nor does it have any plans to implement, the community transition stage of treatment.

118.    The failure to evaluate for the efficacy of use of pharmaceuticals in treatment, to offer pharmaceuticals as a part of treatment where appropriate, to provide adequate staffing for the treatment program, and to have all phases and stages of the treatment program, including a community release program, in place and functioning is unreasonable and a substantial departure from acceptable professional standards.

119.    FCCC has failed to provide Mr. Durden with individualized treatment as will give him a reasonable opportunity to improve his mental condition.

120.    Mr. Durden is being harmed by his extended and continued confinement in the facility as a result of the Defendants' failure to evaluate for the efficacy of use of pharmaceuticals in treatment, to offer pharmaceuticals as a part of treatment where appropriate, to provide adequate staffing for the treatment program, and have all of the phases of the treatment program, including community transition, developed and in place.

### Plaintiff Daniel Fabian

121.    As set forth in ¶ 15, Mr. Fabian was convicted of a sexual offense in May 1995. He was sentenced to four years, six months imprisonment. He completed his sentence in October 2000. Mr. Fabian has been involuntarily confined at FCCC pursuant to the Act since the completion of his prison sentence in October 2000. Mr. Fabian consented to treatment in October 2000.

122.    Mr. Fabian completed Stage 2 of treatment in February 2002. Mr. Fabian completed Stage 3, Phase 1 of the treatment program in February 2004. Mr. Fabian is currently in Stage 3, Phase 2 of the program.

123.    Mr. Fabian has not been evaluated to determine the efficacy of any pharmaceutical treatments, nor has he been offered any pharmaceuticals that may decrease sexual impulses as a part of treatment if appropriate.

124.    The amount of time Mr. Fabian spends in treatment group activities depends on the number of specialty groups in which he is placed as well as staff availability to lead those groups. There have been instances when his time in treatment groups is as low as two hours per week because of staff unavailability.

125.    Mr. Fabian has consented to participate in any and all mental health treatment programs provided by the Defendants. Mr. Fabian has never refused treatment or to participate in any tests administered by the Defendants. Mr. Fabian has fully cooperated with facility staff and successfully completed all of the treatment stages available to him. Mr. Fabian is ready to move on from the current treatment program to stage IV: discharge readiness.

126.    Mr. Fabian is unable to complete the treatment program because FCCC does not have a discharge readiness program currently in place.

127.    Although FCCC recognizes the importance of family involvement in discharge readiness, Mr. Fabian has not been offered to incorporate his family into his treatment and rehabilitation efforts.

128.    The failure to evaluate for the efficacy of use of pharmaceuticals in treatment, to offer pharmaceuticals as a part of treatment where appropriate, to provide adequate staffing for the treatment program, and to have all phases and stages of the treatment program, including a community release program, in place and functioning is unreasonable and a substantial departure from acceptable professional standards.

129.    FCCC has failed to provide Mr. Fabian with individualized treatment as will give him a reasonable opportunity to improve his mental condition.

130.    Mr. Fabian is being harmed by his extended and continued confinement in the facility as a result of the Defendants' failure to evaluate for the efficacy of use of pharmaceuticals in treatment, to offer pharmaceuticals as a part of treatment where appropriate, to provide adequate staffing for the treatment program, and have all of the phases of the treatment program, including community transition, developed and in place.

### Plaintiff Bruce Kramer

131.    As set forth in ¶ 16, Mr. Kramer was convicted of a sexual offense in August 1994. He was sentenced to nine years of imprisonment. He completed his sentence in September 2000. Mr. Kramer has been involuntarily confined at FCCC pursuant to the Act since the completion of his prison sentence in September 2000.

132.    Mr. Kramer has been placed in punitive confinement while at FCCC. Mr. Kramer was not endangering himself or others when placed in punitive confinement.

133.    Mr. Kramer's most recent stay in punitive confinement began in August 2003 and did not end until February 2004.

134.    Mr. Kramer was placed in punitive confinement for refusing to go back to a housing assignment where he feared for his life. Mr. Kramer was placed in punitive confinement for purely punitive reasons because he did not follow the rules.

135.    Mr. Kramer notified the administration on numerous occasions that all he wanted was a different housing assignment. However, the administration consistently said Mr. Kramer would remain in punitive confinement until he accepted their demand that he return to his housing assignment.

136.    During his six-and-a-half month stay in punitive confinement, Mr. Kramer was locked in a single-man cell for 22-23 hours per day. Mr. Kramer was forced to wear handcuffs and shackles when leaving the cell for any reason.

137.    Mr. Kramer had in his possession only bedding, clothing, a few personal hygiene items, and a Bible. Mr. Kramer was limited to one phone call per day. Mr. Kramer was not permitted to receive certain mail, such as packages, while in confinement.

138.    Mr. Kramer did not receive a hearing or a confinement order specifying the duration of his confinement.

139.    Current professional standards require that confinement be used in emergency situations as a tool of last resort, patients receive notice and a hearing prior to seclusion, and seclusion orders be for a limited duration.

140.    Mr. Kramer was harmed by being placed in punitive confinement, not receiving a hearing, and not having a confinement order for a limited duration.

## Constitutional and Statutory Violations

141.   Defendants do not have all four of the stages of the FCCC treatment program design in place and available to all residents.  Only parts of the FCCC treatment program have been implemented and are functioning at this time.

142.   Defendants do not provide Plaintiffs who are not participating in the sex offender treatment program with a treatment plan addressing the goal of getting them to participate in treatment.

143.   Defendants do not have adequate customs, policies, or practices that enable them to identify or assess Plaintiffs for disabilities that impair Plaintiffs' functioning in sex offender treatment and would effectively exclude them from participating in treatment.

144.   Defendants do not have specialized sexual offender treatment programs in place to accommodate the needs of Plaintiffs with developmental disabilities, learning disabilities, or major mental illnesses. Plaintiffs with these disabilities have no meaningful access to sexual offender treatment and are effectively excluded from participating in treatment.

145.   Defendants do not offer pharmaceutical treatment modalities, such as anti-androgen or selective seratonin reuptake inhibitor (SSRI) medications, that have been shown effective in the treatment of some sex offenders.

146.   Defendants have failed to make adequate provisions for the participation of residents' family members in rehabilitation efforts.

147.   Defendants have failed to provide an adequate number of properly trained and certified treatment staff and number of hours in treatment each week.

148.   Instead of providing treatment and conditions that are related to the purpose of Plaintiffs' confinement, Defendants are using the Act as a means of warehousing those in the program.  Since the program was initiated over four years ago, not one resident has been permitted to successfully

complete the Defendants' treatment program to the point where the Defendants recommend discharge to the courts.

149.    Defendants do not provide Plaintiffs with individual service plans detailing the needs, appropriate mental health interventions, and goals related to Plaintiffs' mental illnesses.

150.    Defendants do not employ an adequate number of psychiatric staff to handle the specialized needs of residents living with severe mental illnesses.

151.    Defendants do not have sufficient staff specialized to address the daily needs of residents with major mental illnesses. Plaintiffs continue to experience the effects of their untreated mental illnesses, which are exacerbated by the conditions at FCCC. Additionally, Plaintiffs will never have an opportunity for release from the facility because they cannot participate in treatment until their mental illnesses are addressed.

152.    Defendants fail to provide mental health services of adequate frequency, duration, and substance to meet the needs of residents with severe mental illnesses.

153.    Defendants do not have sufficient staff specialized to address the daily needs of residents who are developmentally disabled.

154.    The aforesaid failure to provide constitutionally and statutorily adequate treatment is a substantial departure from accepted professional judgment, practice or standards and demonstrates that the Defendants did not base their decision on such professional judgment.

155.    As a result of the lack of care and treatment at FCCC, Plaintiffs are being warehoused for an indefinite period of time.

156.    Liberty does not have any provisions for written or verbal notice of the reasons for an individual resident being put in punitive confinement.  It does not contain provisions for investigation, nor does it give the resident an opportunity to be heard, present a defense, or call

witnesses on his behalf. No maximum time period for punitive confinement is provided, and therefore it may be indefinite. The staff members making the decisions on punitive confinement apply inconsistent standards. Residents who are punitively confined are denied access to cleaning supplies and personal items, as well as being denied recreation time outside of the cell and attendance at religious services.

## FIRST CAUSE OF ACTION
## FAILURE TO PROVIDE COMPLETE AND ADEQUATE TREATMENT PROGRAM

157.    The actions of the defendants alleged in paragraphs 1 to 156 constitute a failure to provide each plaintiff treatment that will give him a realistic opportunity to meet the statutory requirements for release from confinement, in violation of his rights and privileges guaranteed by the Fourteenth Amendment to the United States Constitution.

158.    The actions of the defendants alleged in paragraphs 1 to 156 violate plaintiffs' substantive due process rights in the following respect:

   a.    The failure to provide an adequate treatment staff and number of hours in treatment each week.

   b.    The failure to modify the sex offender treatment program for residents with learning disabilities, developmental disabilities, or severe mental illness.

   c.    The failure to provide pharmacological treatment designed to reduce deviant sexual impulses when appropriate.

   d.    The failure to maintain treatment plans for residents who have not consented to treatment addressing self-improvement and therapeutic engagement issues.

   e.    The failure to incorporate family into the treatment process.

   f.    The continued use of punitive confinement.

g. The failure to plan and implement a community transition component to the treatment program.

## SECOND CAUSE OF ACTION
## FAILURE TO PROVIDE MENTAL HEALTH SERVICES

159. The actions of the Defendants alleged in paragraphs 1 to 156 constitute a failure to provide each plaintiff appropriate mental health services that will give them an opportunity to participate in treatment, therefore giving them a realistic opportunity to meet the statutory requirements for release from confinement, in violation of the rights and privileges guaranteed by the Fourteenth Amendment to the United States Constitution.

160. The actions of the Defendants alleged in paragraphs 1 to 156 violate plaintiffs' substantive due process rights in the following respects:

a. The failure to provide individual service plans for residents with serious mental health problems.

b. The failure to employ adequate psychiatric staff.

c. The failure to employ and train adequate personnel to staff the dorm in which the residents with severe mentally illnesses reside.

d. The failure to provide mental health services of adequate frequency, duration, and substance to meet the needs of residents with severe mental illnesses.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

161. The actions of the Defendants alleged in paragraphs 1 to 156 constitute a denial of meaningful access to sex offender treatment for Plaintiffs with disabilities.

162. Plaintiffs Canupp, Myers, McGee, and Davidson are qualified persons with disabilities.

163.    Plaintiffs Canupp, Myers, McGee, and Davidson have been denied participation in, or the

benefits of, services, programs, or activities of FCCC because of their disabilities.

164.    Defendants could make modifications to the treatment program to accommodate Plaintiffs

with disabilities without fundamentally altering the program.

## FOURTH CAUSE OF ACTION
## DUE PROCESS VIOLATION: USE OF PUNITIVE CONFINEMENT

165.    The actions of the Defendants alleged in paragraphs 1 to 156 constitute the use of punitive

confinement in a treatment facility in violation of the procedural due process rights guaranteed by the

Fourteenth Amendment to the United States Constitution.

## CLAIM FOR RELIEF

WHEREFORE, plaintiffs request that this Court:

A.  Certify this action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

B.  Issue a declaratory judgment that the conduct, conditions and treatment described in this complaint violate the Plaintiffs' constitutional and statutory rights in the manner identified in this complaint.

C.  Issue a permanent injunction against Defendants, their officers, agents, servants, employees and attorneys, and upon all persons in active concert or participation with them who receive actual notice of the injunction requiring them to submit and implement a plan correcting the constitutional and statutory deficiencies alleged in this complaint.

D.  Issue an award for plaintiffs' costs, litigation expenses, and reasonable attorney's fees pursuant to 42 U.S.C. §1988 and 42 U.S.C. §12205.

E.  Such additional relief as the Court may deem just and equitable.

Respectfully submitted,

Kristen M. Cooley, Esq.
Florida Bar No. 649635

Christopher M. Jones, Esq.
Florida Bar No. 994642

Cassandra J. Capobianco, Esq.
Florida Bar No. 614734

Florida Institutional Legal Services, Inc.
1010-B NW 8th Avenue
Gainesville, Florida 32601
352-375-2494
352-271-4366 (FAX)

and

Peter P. Sleasman, Esq.
Florida Bar No. 367931

Alice K. Nelson, Esq.
Florida Bar No. 211771

Southern Legal Counsel, Inc.
1229 NW 12th Avenue
Gainesville, Florida 32601
352-271-8890
352-271-8347 (FAX)

Attorneys for Plaintiffs

By:  Kristen M. Cooley, Esq.
     Florida Bar No. 649635

and

By:  Peter P. Sleasman, Esq.
     Florida Bar No. 367931
     Trial Counsel